# Richmond

## Samuel Howard Thrasher, Et Al. v. Robert Earl Thrasher, Et Al., Etc., Et Al.

March 6, 1961.

Record No. 5202.

Present, Eggleston, C. J., and Spratley, Buchanan, Whittle, Snead and I'Anson, JJ.

The opinion states the case.

*William L. Parker* and *Richard B. Spindle, III* (*Thomas L. Sawyer*, on brief), for the appellants.

*James N. Garrett* (*Allen J. Gordon*, on brief), for appellees, Robert Earl Thrasher, et al.

*Howard I. Legum* (*Louis B. Fine; Jerrold G. Weinberg; Fine, Fine, Legum, Weinberg & Schwan*, on brief), for appellees, Mary E. Thrasher, et al.

*Paul M. Lipkin* (*Goldblatt & Lipkin*, on brief), for appellees, Nellie Mae Ross Thrasher, et al., etc.

BUCHANAN, J., delivered the opinion of the court.

This is a suit in equity brought to have partition among its owners of a tract of 520 acres of land in Norfolk county, and the controversy is on the question of who are the owners.

The tract was owned by Mrs. Dora B. Thrasher, who died February 18, 1934, leaving a will dated December 16, 1931, which was probated March 2, 1934. In the first four clauses she directed payment of her debts and disposed of certain intangible property.

In the fifth clause she gave "the residue of my estate, both real and personal, * * to my seven sons, namely, Albert Roscoe Thrasher, Allen S. Thrasher, Herbert Maxwell Thrasher, Robert Guy Thrasher, Samuel Howard Thrasher, Thomas Williams Thrasher, and Daniel Leroy Thrasher, in equal shares of one-seventh (1/7) each." but

deducting from the share of Daniel Leroy and giving to the other six the sum of $2,500. These seven sons are referred to in the record and will be herein referred to respectively as Roscoe, Allen, Herbert, Guy, Sam, Tom and Roy.

In the sixth clause the testatrix directed "that the proceeds from a certain contract in existence at this time" between Allen, Herbert, Sam and Tom, of the one part, and herself of the other part, "be applied to the payment of certain notes secured by deed or deeds of trust in favor of the New York Life Insurance Company, made by my late husband, R. E. Thrasher, and myself." In the second paragraph of the same clause she further directed and requested "that a certain deed of bargain and sale made by me to the said Allen S. Thrasher, Herbert Maxwell Thrasher, Samuel Howard Thrasher, and Thomas Williams Thrasher, dated March, 1930, be admitted to record in the proper Clerk's Office, and that same be given its purported effect."

She appointed her son Sam as executor of the will.

The suit for partition was instituted in November, 1956, by the guardians and wife of Roy. An answer was filed by the other six sons denying that the tract of land was owned by their mother at the time of her death, and alleging that prior to her death she "made, executed and delivered a deed," conveying the tract to Allen, Herbert, Sam and Tom, which deed "was dated in March of 1930 but has never been recorded;" and that if said deed did not vest title in these four sons it was so vested by the will. Later, however, Herbert, one of the grantees, filed a separate answer and also a cross-bill. In the latter he said that he had been advised that his mother did convey the tract to the four sons; that said deed was dated March, 1930, but he had not seen it; that he was advised that it was in the possession of one of the defendants, but had never been admitted to record; and that if it be established and proved, then the tract should be partitioned among the grantees.

An answer to this cross-bill was filed by Sam, Tom, Allen and Roscoe, in which they alleged that they were not advised that their mother in her lifetime conveyed the tract to them and Herbert, but were advised that she executed a deed "which when delivered" would convey to them certain property owned by her and fully described in the deed; that they neither admitted nor denied that it was the same property described in the bill of complaint. They further admitted that the will directed that the said deed be admitted to record and be

given its purported effect, but they did not know exactly what the testatrix meant by "its purported effect," but believed she meant to convey the property therein described in fee simple to the four named grantees.

After a decree of reference had been entered the complainants filed an amended bill stating that Tom had died since the suit began and that allegedly he had executed a trust agreement to Sam, as trustee, affecting the interest of his successors. Sam, individually and as trustee, and Allen and Roscoe filed an answer to the amended bill in which they denied that the complainants had any interest in said real estate and averred that prior to her death their mother had entered into a contract with Allen, Herbert, Sam and Tom, in which she agreed to sell and they agreed to buy said tract of land; that "said deed" was not actually recorded during their mother's lifetime but they believed that it was delivered, but if there was any doubt about the delivery of it all questions of title were eliminated by the language of the will directing that "a certain deed" be admitted to record and given its purported effect. They further alleged that Tom's interest had vested in Sam as trustee under a trust agreement and a deed of trust; and further that by an agreement of March 29, 1943, Roy had conveyed all his interest in his mother's estate to Sam, Allen, Roscoe, Guy and Herbert.

Roscoe and Roy died during the pendency of the suit and other pleadings and answers were filed and additional parties were brought in.

By decree of May 6, 1957, the court referred the cause to John A. MacKenzie, one of its commissioners in chancery, with direction to inquire into and report to the court the real estate owned by Dora B. Thrasher at the time of her death and who are the owners of it, together with other matters not necessary now to be stated. The commissioner heard testimony at intervals over a period of fifteen months, constituting nine typewritten volumes, and on January 23, 1959, filed his report stating his findings and the reasons on which they were based.

The commissioner reported that the tract of 520 acres, the subject of the suit and which he described in his report, was the only real estate owned by Dora B. Thrasher at the time of her death. He held, so far as necessary to be stated at this point, (1) that the tract of land passed to the seven sons of Dora B. Thrasher under her will; (2) that the instrument of March 29, 1943, executed by Roy was

effective to transfer his interest in the tract to Allen, Sam, Roscoe, Guy and Herbert; (3) that Tom was mentally incompetent to execute the trust agreement and deed of trust to Sam, trustee, the effect of which would have been to give Sam voting control of Tom's stock in Greenbrier Farms, Inc., and Greenbrier Farms Holding Corporation, as well as control of Tom's interest in the land; and (4) that the land was not susceptible of partition in kind, and that he was informed by all counsel that none of the owners was willing to take the whole of the property and pay the others for their interests.

Exceptions to the findings adverse to their claims were filed by the respective parties, the cause was submitted on December 17, 1959, and on February 4, 1960, the court entered the decree now appealed from by Sam, Allen and Herbert, Jr. (to whom Herbert, Sr., transferred his interest by instrument dated November 27, 1959). The decree noted that the exceptions to the holding that Tom was incompetent were withdrawn by counsel for Sam and Allen, and adjudicated: (1) that the trust agreement and deed of trust dated February 29, 1956, from Tom and wife to Sam, trustee, be vacated and annulled; (2) that the exception be sustained to the holding of the commissioner that the release executed by Roy dated March 29, 1943, to five of his brothers was effective, and that said release be set aside and declared void; (3) that all other exceptions to the commissioner's report be overruled; (4) that under the will of Dora B. Thrasher each of her seven sons acquired an undivided one-seventh interest in the land sought to be partitioned, and (5) that said property, the fee simple value of which was $300,000, was not susceptible of partition in kind and could not be allotted to any one person or group of persons, and commissioners were appointed to sell it.

The appellants have abandoned their assignment of error to the holding that the release executed by Roy was void, and say that the issues for determination on this appeal are whether the 520-acre tract passed to the seven sons under the will, or is the property of Allen, Herbert, Sam and Tom, under a written contract made by Dora B. Thrasher in her lifetime, conveyed to them by deed executed and acknowledged by her, and "consummated" by the will of Dora B. Thrasher in which she directed that the deed be recorded and given its purported effect. We need consider, therefore, only the contract, the deed and the will.

I. The Contract is an instrument bearing date March 3, 1931, purporting to be between Dora B. Thrasher and Sam, Herbert, Allen and Tom. It is composed of two pages, the first of which is a carbon copy. The second page bears the signatures and seals of Dora B. Thrasher and Samuel H. Thrasher written in different colored ink. There are four additional lines for signatures and seals, but all of these are blank. On the first page it states the consideration to be $25,000 "to be paid to the said party of the first part by the said parties of the second part in the manner hereinafter outlined," for which the party of the first part sells to the parties of the second part a tract described by lines running from point to point, the area of which is not stated. On the second page it is stated that $40,000 is the price of the tract, $15,000 of which consists of payments on a previous contract [not otherwise identified], $10,000 to be paid in annual installments and $15,000 in full on February 1, 1952.

Samuel Thrasher testified that his mother signed the contract and delivered it to him; that he paid the $15,000 to his father, with whom they had a similar contract for the same land at the same price but he did not know what became of that contract. He had no canceled checks or receipts to evidence any payments to his father. He said they paid him certain money along and his father generally deducted it from their milk checks when he needed money. He said that the "four of us boys" made the annual payments to their mother as long as she lived, and after her death "what was paid was to the New York Life or Greenbrier Farms." But he also testified that the remaining $15,000 had never been paid because it was his understanding from his mother that "she gave us this property when she gave Guy and Roscoe stock in Greenbrier Farms and in lieu of that she was cancelling the debt."

On cross-examination he admitted he had no independent recollection of this contract. He did not know when or where it was executed or whether he was present when his mother signed. He could not account for the fact that nobody had signed except him and his mother. He said there was another copy which the others signed but he did not know where that was or what happened to it, and inferred that it might have been destroyed in a fire in 1946 or 1947, when the whole Greenbrier Farms office was burned. Asked how he happened to salvage this copy, he said he did not know. He did not remember who prepared the contract, and could not account for the difference in the description in the contract and in the deed. The

attorney who had represented Greenbrier Farms and the members of the Thrasher family, including the mother, in their various transactions, had no recollection of such a contract.

Herbert Thrasher, named as one of the purchasers in the alleged contract, testified that he had never known such a contract existed and that his first information about it was in this hearing, although he was living with his mother in her home at the time of its date. He knew of no payments being made under it.

Roscoe testified that his mother told him that she had made this contract but so far as he could say he never saw it until the time of this suit, and he did not think Sam had $15,000 to pay on any supposed obligation.

Guy testified that the first time he ever saw the instrument was when it was offered in evidence. As to the alleged contract with his father, he said there was discussion about his father's conveying 100 acres of land to each of the sons, but it was never consummated.

Allen testified that he first saw the contract sometime after his mother died, but he could not say when. He did not know who had it after her death, but it was with his mother's papers. He did not know when or how it was executed, but his mother told him she had executed it.

It is of significance that in the answer to the original bill filed by five of the brothers no reference was made to the existence of such a contract. The appearance of the instrument itself, and the confused, conflicting and improbable testimony about it fully warranted the conclusion of the commissioner and of the trial court that no valid contract from Dora B. Thrasher to the four sons had been established. We agree with the commissioner that it is inconceivable that the parties involved in a transaction of such importance "would be so little informed as to the existence and execution of such an instrument, or of the proper receipts for the alleged payments made thereunder."

The principle stated in *Enterprise Theatre* v. *Stutz*, 155 Va. 734, 752, 156 S. E. 401, 407, cited by the appellants, that where an instrument which shows on its face that it was to be executed by other persons besides those who have executed it, is found in the hands of the party to whom it is made, it will be presumed, " 'in the absence of all other evidence on the subject' " to have been duly delivered as the deed of those who have executed it, is not applicable here. Other

evidence is not absent here but is definitely present and persuasive on the subject.

II. The Deed relied on by the appellants bears the date of March 6, 1931, was signed by Dora B. Thrasher, acknowledged by her before a notary public on that date, and purports to convey to Allen, Herbert, Sam and Tom the land now in controversy. It was typed on a printed form and contained misspelled words, some of which were shown to be according to Sam's method of spelling. But Sam testified he did not prepare the deed and did not know who prepared it. He testified that he discussed the deed with his mother before her death but couldn't say that he suggested that she make it. He said he first knew of its execution and first saw it shortly after his mother's death in some of her effects; that he did not know who took possession of it; that it then disappeared "and was gone a long time" and the next time he saw it was a number of years later and Tom had it. Then, he said, in the first part of 1957 he found the deed among Tom's papers when the vault was being cleaned out and he turned it over to Tom, and sometime later he told his attorney that "we had it." He said he did not know where the deed was when the suit was brought and that Tom did not have it then.

Allen testified that he knew his mother had made a deed but he never saw it until after her death.

Herbert, who was living with her at the time and was named as a grantee, testified that he did not know of the deed until the will was read and never saw it until it was produced in the suit.

Tom, the remaining grantee, was mentally incompetent and did not testify.

Samuel Goldblatt, former attorney for the Thrashers, as referred to above, and called as a witness by the appellants, testified that the first time he saw the deed was when Sam showed it to him a few days before he testified.

The deed has never been recorded. Sam testified that the reason for this was that Tom did not want it recorded because of some judgments against him.

It was shown by court records that on July 6, 1939, more than eight years after the dates of the alleged contract and deed, Sam testified in the chancery cause of *Herbert M. Thrasher, Committee of Thomas W. Thrasher* v. *Greenbrier Farms, Inc., et al.*, and was asked: "Did Thomas W. Thrasher ever own one-fourth interest in a tract of land in Norfolk County known as Greenbrier Farms?" He

answered: "Never. Never to my knowledge has he ever owned any land anywhere except in Danville." A decree was entered in the cause on October 2, 1939, holding that Thomas W. Thrasher owned no real estate.

It is obvious from this and other evidence before the commissioner that there were circumstances of suspicion concerning this deed, in addition to the undisputed and fatal fact that there was no delivery of the instrument by Dora B. Thrasher in her lifetime.

Delivery is, of course, essential to the validity of a deed. *Crump* v. *Gilliam*, 190 Va. 935, 941, 59 S. E. 2d 72, 74. The acknowledgment of a deed, standing alone, is not sufficient to make a *prima facie* case of delivery. Where the grantor retains possession, without declaration or other evidence of intent to deliver, the inference is that he had no purpose at the time to deliver it. *Enright* v. *Bannister*, 195 Va. 76, 80, 77 S. E. 2d 377, 380. "* * there can be no delivery of a deed by a dead hand. A deed as such, must operate, if at all, *inter vivos.*" *Mumpower* v. *Castle*, 128 Va. 1, 11, 104 S. E. 706, 709.

█ III. The Will was dated December 16, 1931, in the same year as the dates of the alleged contract and deed. In the sixth clause was the direction, as quoted above, that a deed "dated March, 1930," be admitted to record and given its purported effect.

The will, all except the codicil, was prepared by Samuel Goldblatt, the attorney mentioned above, who testified that Samuel Thrasher furnished him the information from which it was prepared, and as noted above he had no recollection of ever seeing the deed. The will was not executed in his office and he was not present when it was executed.

The appellants contend, in addition to the claim that the will effected delivery of the deed, that the direction in the sixth clause that "a certain deed * * dated March, 1930" be admitted to record and given its purported effect is "a clear testamentary direction transferring legal title to the tract."

In *Payne* v. *Payne*, 128 Va. 33, 36, 104 S. E. 712, 713, the will stated "I have heretofore Deeded to my son * * C. C. Payne, what I intend him to have which deed will be found along with this will." The deed was found with the will and there was no question about its identity. The court pointed out that the testator was a lawyer and therefore it was inferred that when he recited in the will that he had "Deeded" the property to his son "he intelligently and purposely used a word importing and expressing the finality of the transaction,

knowing that there could be no valid conveyance unless the deed should be delivered before his death." 128 Va. at 49, 104 S. E. at 717.

In *Mumpower* v. *Castle, supra,* the *Payne* case was referred to as being "a case of declaration of intention to deliver contained in a will, the declaration being of such intention existing at the time the deed was executed." 128 Va. at 10, 104 S. E. at 709.

That is not this case. As said by the commissioner in his report:

"That Dora B. Thrasher did not intend a delivery in her lifetime is evident not only in her failure to part physically with the instrument in her lifetime, but in her written, expressed intention to exercise control and direction of the instrument by instructions contained in Clause 'Sixth' of her Will, in which she directs (if it in fact is the same deed) that it '* * be recorded * * and given its purported effect * *'."

In the case of *Lawless* v. *Lawless,* 187 Va. 511, 518, 47 S. E. 2d 431, 434, we said that before a document extrinsic to a will is allowed to be incorporated therein, three things are essential: (1) the document must be a paper in actual existence at the time of the execution of the will; (2) it must appear from the face of the will that it is a paper in actual existence; and (3) it must be identified and described with reasonable certainty in the will.

What the will refers to is a deed "dated March, 1930," which was the date given by Sam to the attorney who wrote the will, as well as the date stated in the answer of the appellants to the bill of complaint. There is nothing else to identify the property in the deed referred to. As the commissioner said in his report, "The only description here to delineate this from any other deed is the date, and the deed offered in evidence in the instant case is dated *March 6, 1931*"; that the identity required of a deed sought to be incorporated in a will "means such identity as to set up one deed and the property described therein to the exclusion of any other." The commissioner continues:

"Not only is the date of the deed referred to in the Will *not* the date of the deed introduced in evidence, but also is there no safeguard in a description capable of excluding any other deed between the parties being substituted at will and thus thwarting the laws relative to the execution of testamentary documents."

We agree with the commissioner's conclusion. He heard and saw the witnesses who testified. The mass of testimony presented to him contained many conflicts and involved many doubts. The appellants'

case rested largely upon the testimony of Samuel Thrasher, whose character and credibility were vigorously assailed. The attorneys for his brother Tom's estate, while claiming a one-fourth interest, say in their brief that they could not ask any court to rely on Sam's testimony unless corroborated by other credible evidence. The commissioner filed a well-considered report which was approved by the trial court, with the exception noted. While his report does not carry the weight of a jury's verdict, Code § 8-250, yet it "should be sustained unless it plainly appears, upon a fair and full review, that the weight of the evidence is contrary to his findings." *Hudson* v. *Clark*, 200 Va. 325, 329, 106 S. E. 2d 133, 136. It does not so appear in this case with respect to the matters about which the appellants complain.

The appellants in their brief assert that the appellees, or some of them, have been guilty of laches. There is no specific assignment of error on that point, it does not appear that such contention was made in the trial court, and hence it cannot be successfully made here. In any event it is without substance.

■ Appellants assigned error to the court's denial of their motion that the land be allotted to them and they be allowed to pay to the others for the value of their interests, pursuant to Code § 8-692. The motion was made two days before the final decree. On the date of the decree Robert Guy Thrasher and the successors in title of Daniel Leroy Thrasher filed a similar motion asking that the tract be allotted to them. The court found, as stated, that it should be allotted to neither group. There was no error in that ruling. The language of the allotment provision is permissive and its exercise rests in the sound discretion of the court. In this case it is not shown that the court should have honored the request of one group over that of the other, or that the request of either should have been granted.

For the reasons stated the decree appealed from is

*Affirmed.*