[Filed January 19, 1887.]

## ISABEL TELLER v. MARIAN BROWER ET AL.

DEED OF CONVEYANCE—DELIVERY.—The evidence reviewed, and held to establish the fact of the execution and delivery to the plaintiff of a conveyance of the real property in controversy.

POLK COUNTY. Plaintiff appeals. Reversed, and decree in accordance with complaint.

*N. B. Knight* and *Holmes & Hayden*, for Appellant.

*Tilmon Ford*, for Respondents.

THAYER, J.—The appellant commenced a suit against the respondents in said circuit court, to quiet her title in certain real property situated in said county. The complaint is in the usual form adopted in such suits. The respondent claims that she is entitled to a right of dower in the property, as the widow of one George W. Teller, deceased, who died seized of the said property. The appellant was the daughter of the said George W. Teller, and claims the entire property in fee, by a deed of conveyance thereof, prior to his marriage with the said respondent, which deed has been lost. A question was made in the case as to the time when the said respondent and the said George W. Teller intermarried; said respondent claiming that they were married twice, the first time, on the 27th day of December, 1867, in Boone County, Iowa, and the second time on the 23d day of December, 1878, at said Polk County. The deed to the property is claimed to have been executed by the said George W. Teller to the appellant in January, 1878, subsequent to the first pretended marriage, and prior to the last one. But the evidence does not sustain the allegation that a marriage took place between said parties on the 27th day of December, 1867. It shows, conclusively, on the other hand, that they were at that time, and for a long time thereafter, incapable of contracting a lawful marriage. The respondent was, at the time of the alleged first marriage, the wife of one Amos Kentner; and she continued to be his lawful wife until

the 22d day of October, 1868, at which last time a decree of divorce was granted in favor of the said Amos Kentner against the respondent, by the district court of the sixth judicial district, State of Minnesota. It is not improbable that the parties may have gone through the formal ceremony of a marriage in Boone County, Iowa, at the time alleged; but it was only a mere sham and pretense, and the parties, unquestionably, so understood it at the time.

The main question in the case is, as to whether the said deed was executed to the appellant as alleged by her. It appears from the evidence, that the appellant, and the respondents James B. Teller, Franklin Teller, Samantha J. Higgins, Michael A. Teller and George W. Teller, were the children of George W. Teller, deceased, by a former wife; that after the death of their mother, and while they were quite young, the said Marian Brower left her husband, Amos Kentner, and went and lived with the said George W. Teller. This occurred about the time of the first pretended marriage between the parties, and they continued to live and cohabit thereafter as husband and wife. After residing a short time in the northwestern states and territories, they came, in 1869, to Oregon, representing themselves to be husband and wife; but were never lawfully married, until on the said 23d day of December, 1878; that the said George W. Teller acquired various property in Oregon, including the premises in question, another tract of three hundred and twenty acres of land in Polk County, and also a tract of land in Tillamook County; that about two years prior to the time it is alleged he made the deed in question to the appellant, he conveyed to the said respondent, Marian Brower, the three hundred and twenty acre tract in Polk county, which, at the time, was as valuable, if not more valuable, than the premises claimed to have been conveyed to the appellant. He sold the Tillamook place subsequently, and the proceeds of the sale constituted a part of his assets at the time of his decease, which occurred November 29, 1881.

The circuit court, in the decree from which the appeal is taken, seems to have placed its decision of the case more upon

the grounds that the deed was not delivered to the appellant, than upon the grounds that no such deed had been signed by the grantor, as required by the statute ; at least, the decree recites that " the court having fully considered the matters at issue in said case, finds from the testimony as conclusions of facts : that the alleged deed set out in plaintiff's complaint was never delivered to the plaintiff by George W. Teller "; which would seem to imply that it might have been signed, witnessed and acknowledged. The more difficult question with this court has been to determine whether such a deed was ever in fact signed. There would be no difficulty, as it appears to us, in finding that the deed was delivered, if ever made. The circumstances surrounding the affair were of such a nature as to render it reasonable that George W. Teller, deceased, may have executed the deed as claimed. He had two daughters, one of whom was insane, and an inmate of the asylum. His other children were all boys, and he would have been more likely, it seems to me, to have confided the property in question to the appellant than to any of his other children. By doing that it would be likely to remain intact, and enable the appellant to bestow that assistance upon the more helpless of the children, and she would probably be more impressed with such a duty than a son would be. There is no doubt in my mind but that a woman, as a general thing, has a finer sense of honor in such matters, and a much deeper sympathy than a man has, and the decedent was doubtless conscious of that fact.

The conveyance, if made as claimed, was evidently in the nature of a gift in prospect of death; and it would certainly have been injudicious to have attempted to divide up the premises amongst all the children, or to have left it subject to such division as the law would have made. The alleged disposition of the premises, under the circumstances, would be better than to have limited them to the appellant by devise. In the latter case they would have had to be administered upon, which would have tied up the property in the hands of an executor until the administration was closed ; and would, in case the testator left a widow, have subjected it to dower. In this

case, to have cut off any right of dower the respondent, Marian Brower, may have had in the property, or which the deceased supposed she had or might thereafter have, would have been eminently just upon his part. He had already settled upon her the three hundred and twenty acres of land, which no doubt was a full equivalent of any right of dower of which she, by the execution of the deed, would be deprived. And it plainly appears that the deceased had an intention to bestow this property upon the appellant. The testimony of her brother, James B. Teller, and that of Mrs. N. J. Hosford, is direct upon that point. The respondent, Mrs. Brower, made a statement to Mrs. Hanville, a witness in the case, showing that such had been the decedent's intention. He stated, also, to said James B. Teller, and to Mrs. Hosford, that he had deeded the premises to appellant; at least, they so testified in the case.

The direct testimony that such a deed was executed is not so strong as might be desired, but with the aid of the corroborating circumstances and the statements referred to, I think it sufficient to justify the finding that it was executed. The testimony of Judge J. Quinn Thornton is to the effect that the deceased stated in his presence that he had executed a deed to the appellant of the Tillamook place; that the deed was not to be put on record, or not to be operative until his death. This evidence is corroborative of the appellant's claim. It tends to show that the deceased had settled property upon the appellant; and it appearing from the proofs that it could not have been the Tillamook property, the inference, in view of the direct testimony of Seth R. Hammer, Esq., that the deceased conveyed to the appellant by deed lands in Polk County which answered to the description of the premises in question; of John W. Minto, who witnessed an instrument of the nature of a deed of that character; and of the appellant herself, who swears positively that her father did execute and deliver to her a deed of the premises, is very natural, that the said statement referred to a deed of the premises in question, and that it was either misunderstood by the witness, or that deceased mentioned in his statement the wrong property.

It is claimed by the counsel for the said respondent, Marian Brower, that the deed alleged to have been so executed is not sufficiently described, nor its loss accounted for. The direct evidence of the execution of the deed is indefinite, but it is positive, and seems to be entirely consistent with the circumstances surrounding the case, and that it should have been lost is not at all remarkable. The circumstances under which the said respondent came into the family of the deceased, the anomalous relation they sustained for a number of years, the fact that he had children growing up to manhood and womanhood, were not favorable conditions to the maintenance of order and regularity. It necessarily produced a heterogeneity which seems to have terminated in his sudden demise. In a state of affairs which would be likely to succeed so irregular an alliance, the loss of a deed of real property affecting the interest of any of the parties would not be a strange consequence; shifting it about from place to place, as the evidence tends to prove, would be quite natural, and its loss from being mislaid or purloined not at all unlikely.

Said counsel also pointed out what he claimed to be discrepancies in the testimony of the appellant, as to the whereabouts of the instrument after its alleged execution and delivery ; but in view of the circumstances surrounding the affair, and of the immateriality of her testimony upon that point, an impeachment of her general testimony cannot be claimed.

Another circumstance urged by said counsel with great force against the appellant's claim to the ownership of the said premises is, that she united with three of her brothers in a petition to the county court for Polk County, for the appointment of one of the petitioners, J. B. Teller, administrator of the estate of the deceased ; and which petition states that the deceased at the time of his death was possessed of two hundred and fifty acres of farm land in said county, referring, undoubtedly, to the land in question.

The appellant, in her examination, fully explained the circumstances under which she signed the petition. She says that it was presented to her while she lay sick at the Cheme-

keta Hotel in Salem; that she knew nothing of its contents except its general object, and signed it formally at the request of her brother presenting it, relying entirely upon him as to its correctness. The fact that she signed such a petition, containing a statement of the character referred to, would ordinarily militate strongly against her claim to the property, though it would not at all be conclusive of her right; but considering the purpose of the petition, and her explanation of the circumstances of her signing it, weakens very much its effect as impeaching evidence; and besides, her case is not dependent upon her unsupported testimony. The court must view it in the light of its surroundings and corroborating proofs, and determine the material facts involved from the whole evidence. It follows from the conclusions indicated as to the result of the proofs, that the decree appealed from must be reversed, and that the relief prayed in the appellant's complaint in the suit should be granted. The decree, therefore, will be to that effect.