Argued May 4, affirmed June 8, petition for rehearing denied
July 6, 1955

LEMON ET UX *v.* MADDEN and CHAPMAN ET UX
and ADKISSON ET AL
284 P. 2d 1037

.

*Wilber Henderson,* of Portland, argued the cause and filed briefs for appellants.

*O. B. Setters,* of Portland, argued the cause and filed a brief for respondent.

Before Tooze, ACJ, and Rossman, Lusk, and Perry, Justices.

PERRY, J.

This is a suit brought by the plaintiffs David L. Lemon and Margaret S. Lemon, husband and wife, against John Madden, defendant, to partition 160 acres of land in Gilliam county.

The plaintiffs in their complaint alleged they were the owners of an undivided one half interest in this real property. The defendant John Madden by his answer denied that the plaintiffs were the owners of any interest in the real property whatsoever, and alleged he was the owner in fee simple of all of the said real property.

In order that all issues before the trial court might be heard, and, if justified, the title quieted against the defendants Nellie Elsie Chapman and C. C. Chapman, wife and husband, the heirs of Mary Elizabeth Atkinson, deceased, and others, as heirs of George W. Marvel, deceased, the trial court ordered that these persons be made parties defendant to the suit.

After hearing the case, the trial court decreed that the defendant John Madden was the owner in fee simple of the real property, and quieted the title against the claimed interests of the plaintiffs and the defendants Chapman and others. From this ruling the plaintiffs and the defendants Chapman appeal.

The evidence discloses that George W. Marvel died leaving as his heirs at law, insofar as the real property here involved is concerned, the following named persons: Mary Elizabeth Atkinson (now deceased), Nellie Elsie Chapman, Ruth Pearl Greenlee, Charlotte Esther Adkisson, Betty Lou Strachan, and as the children of a deceased daughter, Leland Purdy and Elma Florence Purdy. These heirs for the purpose of effecting a partition among themselves of the property of George W. Marvel, deceased, entered into a written agreement in April, 1940, wherein it was provided that Mary Elizabeth Atkinson, Nellie Elsie Chapman, and Ruth Pearl Greenlee should execute warranty deeds to Charlotte Esther Adkisson, Betty Lou Strachan, Leland Francis Purdy and Elma Florence Purdy, conveying real property designated as follows:

> "One-fourth block in Dufur, with house;
> One-half block in Dufur, with house;
> Six Lots in Condon, Gilliam County, Oregon;
> 80 acres in Gilliam County, Oregon;
> 1 Lot 132x165 tract in Monmouth, with house."

and that Charlotte Esther Adkisson, Betty Lou Strachan, Leland Francis Purdy, and Elma Florence Purdy, should execute and deliver warranty deeds to Mary Elizabeth Atkinson, Nellie Elsie Chapman and Ruth Pearl Greenlee, conveying the following designated real property:

> "1 Lot 100x100 at Boyd,
> 1 Block at Boyd,
> 160 acres in Gilliam County,
> and 1 residence and 2 lots in Monmouth"

Deeds of conveyance to effectuate this friendly partition were subsequently drafted by Miss Celia L. Gavin, a well-known and highly respected member of the Oregon Bar, in her office at The Dalles, Oregon, and as of the 28th day of August, 1940, Mrs. Chapman, Mrs. Greenlee and Mrs. Atkinson, and their respective husbands, duly executed a deed to the Dufur town property, the 80 acres of land in Gilliam county, and "1 Lot 132x165 tract in Monmouth, with house", and later on the 28th day of January, 1941, they conveyed the six lots in Condon, Oregon, all in accordance with their agreement. Charlotte Esther Adkisson, and her husband, Betty Lou Strachan, Leland Francis Purdy, and his wife, and Elma Florence Purdy, on the 24th day of May, 1940, as grantors, conveyed to Mary Elizabeth Atkinson, Nellie Elsie Chapman, and Ruth Pearl Greenlee, as grantees, all of the property described in the partition agreement as being located in the town of Boyd, Oregon, and by separate deed as of the same date said grantors conveyed to said grantees all of the property in the town of Monmouth described in the partition agreement. Each of the above instruments transferring title to the real property were duly recorded.

Miss Celia Gavin, who was called as a witness, testi-

fied that, in addition to preparing all of the instruments above-mentioned, she had, in connection with the preparation of the conveyances from Charlotte Esther Adkisson, Betty Lou Strachan, Leland Francis Purdy, and Elma Florence Purdy to the real property situated in Boyd and the residences and two lots situated in Monmouth, also prepared for these same grantors to the same grantees a deed to the 160 acres of land situated in Gilliam county, which is the real property in controversy in this case. Miss Gavin further testified that this conveyance was duly executed by the grantors. She also produced, not only a carbon copy of this conveyance, but also a copy of a letter dated September 28, 1942, addressed to Mrs. T. W. Atkinson, which letter reads as follows:

"Dear Mrs. Atkinson:

"When going through my files today I noticed that I had failed to mail you the three deeds to you, Mrs. Chapman and Mrs. Greenlee from your sister Mrs. Adkisson and your nieces and nephew.

"These deeds should be recorded in Gilliam, Wasco and Polk counties respectively. I think if you send a $1.20 to the County Clerk with each deed that you will be sending the correct recording fee."

Mrs. Greenlee testified that the deed to this property was received by her sister Mrs. Atkinson. The deed to the 160 acres of land in Gilliam county, although fully executed and received by Mrs. Atkinson, one of the grantors, was never placed of record, and its disappearance appears to be unaccounted for, except that it might be presumed that it became lost among the effects of Mrs. Atkinson at the time of her demise.

Subsequently a friendly partition of the properties received by Mary Elizabeth Atkinson, Nellie Elsie

Chapman and Ruth Pearl Greenlee was effected among themselves, and on February 8, 1941, Ruth Pearl Greenlee and Mary Elizabeth Atkinson, and their respective husbands, executed and delivered a conveyance of this 160 acres of land in Gilliam county to the defendants Nellie Elsie Chapman and C. C. Chapman, wife and husband, which conveyance was duly recorded as of May 28, 1943. This conveyance contained an error of description in that it described the land as being in Township 3 North, Range 22, E. W. M. in Gilliam County, Oregon, whereas the true description was Township 1 North, Range 22, E. W. M., and later as of February 17, 1954, a corrective deed was executed.

On August 23, 1943, the defendants Nellie Elsie Chapman and C. C. Chapman, wife and husband, made, executed, and delivered to one S. M. Burnett their warranty deed to the land in question, describing the land as follows:

"All of our undivided interest in the:
"Southeast Quarter (SE ¼) of Section 8, Township 1 North, Range 22 E., W.M., in Gilliam County, Oregon."

On November 29, 1944, S. M. Burnett by quitclaim deed conveyed this real property to the defendant John Madden.

The plaintiffs claim title to an undivided one half interest in this real property under a conveyance made, executed and delivered on June 23, 1950, by Mrs. Adkisson and her husband, Betty Lou (Strachan) Tenold and husband, Elma Florence Purdy, and Leland Francis Purdy and wife.

The appeal of the plaintiffs and the defendants Chapman is based upon the following propositions: (1) that the title to the one half interest in the real prop-

erty, under which the defendant Madden claims by conveyance from Mrs. Adkisson and others, had in fact never passed from these grantors to Mrs. Chapman and her sisters Mrs. Greenlee and Mrs. Atkinson, since there had been no delivery of the prepared, but lost, deed to Mrs. Chapman personally, and that she had never in fact accepted the conveyance; (2) that even though there was a valid conveyance of this property, Mrs. Chapman did not at the time she executed the conveyance to Mr. Burnett intend to convey the whole of the property, and had specifically restricted her conveyance to her undivided interest therein.

■ The evidence conclusively shows that each of the heirs of George W. Marvel, deceased, upon entering into the contract for a friendly partition of all of the real property, intended to carry out the specific terms of that agreement, and that, in accordance with the agreement, deeds of conveyance, including the lost deed, were duly executed by all of the parties. *Teller v. Brower,* 14 Or 405, 14 P 209.

The evidence is also conclusive that the lost deed was fully executed by the grantors, and was duly mailed to Mrs. Atkinson as one of the three grantees named jointly with the defendants Chapman.

■■ Whether or not there was a manual delivery of the deed to Mrs. Chapman personally is of little moment, for, while delivery may be manual, it need not necessarily be so, as delivery of a deed is a matter of the intention of the grantor. *Lancaster v. May, as Administrator,* 194 Or 647, 243 P2d 268; *Fain v. Smith,* 14 Or 82, 12 P 365; see also annotation, 129 ALR 11, Deed, Delivery Without Manual Transfer.

There can be no question in this case but that Mrs. Adkisson, Betty Lou Strachan, Leland Francis Purdy and Elma Florence Purdy, as grontors, at the time of

the execution of the deed intended to part immediately with all control and ownership of the land in question, and to place that control and right of ownership unconditionally in Mrs. Chapman, Mrs. Greenlee, and Mrs. Atkinson.

However, the plaintiffs argue that, even though there may have been a delivery of the deed, nevertheless, there was no acceptance of that conveyance by Mrs. Chapman prior to her execution of the conveyance of this property to Mr. Burnett, and since acceptance is essential to constitute an effective delivery of the deed, no delivery was in fact made.

■■ Again, as with the delivery of a deed, acceptance is a matter of intention. 26 CJS 254, Deeds, § 51b, expresses the rule as follows:

> "There are no hard and fast rules as to what constitutes sufficient acceptance of a deed, and in the main the question is dependent on the intent of the parties. While the grantee cannot assent to a deed while in ignorance of its existence, the grantee may ratify a conveyance by acts done subsequent to delivery."

■ Under the facts as they appear in this case, it would be impossible for Mrs. Chapman to effectively deny the acceptance of the lost deed. She had executed instruments to carry out the provisions of the agreement of the heirs, and had participated in employing Miss Gavin to prepare all conveyances necessary to effect the friendly partition, and by this friendly partition among the various heirs there was effected an agreement to convey and an agreement to accept certain real property. Mrs. Chapman has never repudiated the agreement. Her acceptance of the conveyance was agreed upon prior to the execution of the deed, and its execution and delivery in accordance with the agree-

ment of partition estops her to deny, in the absence of any fraud or imposition, the full delivery and acceptance of the lost deed. *Hoffman, Burneston & Co. v. Mackall,* 5 Ohio St 124.

Under the circumstances of this case, the lost deed became effective to transfer title from the date of its execution by the grantors. *Carney v. Jacobson,* 210 Iowa 485, 231 NW 436.

■ The second contention of the plaintiffs and of the defendants Chapman, that Mrs. Chapman did not intend to convey the whole of the property by warranty deed to Mr. Burnett, is untenable. ORS 93.120 reads as follows:

> "* * * Any conveyance of real estate passes all the estate of the grantor, unless the intent to pass a lesser estate appears by express terms, or is necessarily implied in the terms of the grant."

The use of the words "all of our undivided interest" could mean only that at the time of the conveyance Mrs. Chapman believed she was the owner only of some fraction of the whole, but she intended by that conveyance to convey whatever interest in the whole she possessed. At no time did she express an intention to retain in herself title to any portion of this real property. As determined above, at the time of the execution and delivery of her warranty deed to Burnett she was the owner of a fee simple title in the real property which passed to Burnett.

The decree of the trial court is affirmed.

Neither party shall recover costs in this court.