Argued February 23; affirmed March 23, 1937

# WITHAM *v.* WITHAM

(66 P. (2d) 281)

*Mark V. Weatherford*, of Albany, and *W. T. Durgan*, of Corvallis (with Fred McHenry, of Corvallis, on brief), for appellants.

*Lester G. Oehler* and *Karl Huston*, both of Corvallis (George W. Denman, of Corvallis, on the brief), for respondent.

BEAN, C. J. This is a suit brought by plaintiff, Martha B. Witham, widow of Elvin Witham, deceased, against her son, George E. Witham, to set aside a deed held by defendant George E. Witham, signed and acknowledged by Elvin Witham, now deceased, and Martha B. Witham, his wife, to defendant George E. Witham, dated July 6, 1932, of the west half of real estate described in the complaint by metes and bounds. A decree was rendered in favor of plaintiff, and defendants appealed.

Elvin Witham died in Benton county, Oregon, on January 26, 1935. At the time of his death he was the owner in fee simple of the real estate in question. Elvin Witham left a will, the substance of which is as follows:

"First: I direct that all my just debts and funeral expenses be paid as soon as convenient after my decease.

"Second: I do give, devise and bequeath unto my children Charles E. Witham and George E. Witham, the sum of One Dollar ($1.00) each. I make no larger devises or bequests to my said sons for the reason that I have heretofore transferred and conveyed to each of

my said sons certain parcels of my real property which I consider their fair proportion of my estate.

"Third: All of the rest, residue and remainder of my property, real, personal and mixed and wheresoever situate, I do give, devise and bequeath unto my beloved wife, Martha B. Witham."

On February 4, 1935, defendants placed the deed of record in the deed records of Benton county, in Book 88, at page 524. On February 6, 1935, said will was duly probated in the county court of the state of Oregon for Benton county. Plaintiff Martha B. Witham was named as executrix therein and letters testamentary were issued to her and she duly qualified as such executrix.

It is alleged in the complaint, paragraph 3, which is admitted by defendants in the answer, as follows:

"That plaintiff is the widow of said Elvin Witham; that in his life time said Elvin Witham made and published his last will and testament wherein and whereby he devised and bequeathed One ($1.00) to Charles E. Witham and One Dollar ($1.00) to defendant George E. Witham, and all the rest, residue and remainder of his said property, real, personal and mixed, to plaintiff, Martha B. Witham."

It is alleged and claimed by plaintiff that the defendant George E. Witham unjustly claims title in fee simple to said premises by virtue of said purported deed. Aside from a general denial of a title in plaintiff the defendants set up two defenses: First, that during his lifetime, Elvin Witham, together with plaintiff, made, executed and delivered to defendant George E. Witham a deed conveying title to said premises to the defendant George E. Witham; second, that some time prior to the execution of the deed, said Elvin Witham and his wife, and another son, Charles Witham,

and this defendant, George E. Witham, entered into a family settlement and agreement whereby it was agreed that the plaintiff would join her husband in conveying said 304 acres of land, the west half to defendant George E. Witham, and the east half to Charles Witham, in consideration of Elvin Witham's agreement to convey to plaintiff an undivided one-third of a 345-acre tract of land known as the Dixon place, and a 215-acre tract of land, and all of his personal property and money owned by said Elvin Witham.

The deed involved in this suit was signed and acknowledged by Elvin Witham and his wife, the plaintiff. The deed was taken by Elvin Witham and deposited in his strong box which he kept in his house, and it remained there until after his death, when the plaintiff handed the same to defendant George E. Witham and it was thereafter recorded.

It is contended by defendants that "The deeds to the sons were left by the father with the plaintiff, his wife, to be delivered to the sons upon his death." The testimony in the case does not support this contention. Plaintiff testified that she never had the deeds in her possession until after the death of her husband and the trial court found that the deed under which the defendants claim had never been delivered but at all times remained in the possession of and under the dominion and control of the decedent, Elvin Witham. The testimony, we think, supports such finding.

A short time before Elvin Witham's last illness, the testimony shows, it was discovered that there was an error in the deed, that approximately 90 odd acres, on which the home of the decedent and the plaintiff is situated, were unintentionally included within the description, and, in the meantime, the testimony shows,

some difficulties arose between Elvin Witham and his two sons and there was not entire harmony between them, and Elvin Witham directed plaintiff to destroy the deed in the event of his death.

Plaintiff contends, and testified, that when she handed the deed to defendant George E. Witham and another deed to Charles Witham, the sons, contemporaneously with the receipt of the deeds, promised plaintiff they would give a deed to her for the tract of land upon which her home was situated, which was unintentionally included in the description at the time the deeds were drawn, as it is claimed. Nothing was done to carry out such an arrangement.

The questions in the case are, first, was the deed in question delivered? Second, was there a family agreement or settlement entered into between Elvin Witham, the plaintiff, and the two sons?

Elvin Witham, now deceased, and his wife, Martha B. Witham, father and mother of defendant George E. Witham, had resided on the land in question as a home for a long time, and it was evidently their intention to keep a home thereon during their lifetime. It appears that for more than fifty years plaintiff Martha B. Witham worked with the decedent, Elvin Witham, as his wife and companion and helper, and that whatever property Elvin Witham may have owned at the time of his death was accumulated through the joint labor and efforts of plaintiff and Elvin Witham. She was justly entitled to the bounty conferred upon her by the will of Elvin Witham.

In order to constitute a valid deed it is essential that the deed be delivered, and to constitute a delivery the grantor must part with control over it and retain no right to reclaim or recall it: *Jones v. Schmidt*, 290

Ill. 97 (124 N. E. 835) ; 18 C. J. 208, §§ 113, 114; 1 Devlin on Deeds (3d Ed.), 448, § 279.

Defendants contend that on account of the language used in the second clause of the will, as follows: ''I make no larger devises or bequests to my said sons for the reason that I have heretofore transferred and conveyed to each of my said sons certain parcels of my real property which I consider their fair proportion of my estate,'' that the deed was practically made a part of the will, and prevents the real estate described from passing according to the terms of the will in the third clause thereof. The record shows that Elvin Witham, the testator, in his will recited erroneously that he had conveyed property which in fact had not been conveyed, and the property was still at his disposal at the time of his death. Therefore it passed under the general residuary clause to the beneficiary and did not descend as by intestacy: *In re Bagot,* 3 Ch. 348; *Hunt v. Evans,* 134 Ill. 496 (25 N. E. 579, 11 L. R. A. 185) ; *note to Noble v. Tipton,* 219 Ill. 182 (76 N. E. 151, 3 L. R. A. (N. S.) 645) ; *Allenbach v. Ridenour,* 51 Nev. 437 (279 P. 32).

The intention of the testator to incorporate into a will a paper or document must clearly appear from the will, a mere reference thereto without evidence of such intention being insufficient. There must be an actual reference, and parol evidence is not admissible to identify the document referred to, where a will attempts to incorporate the contents of an extrinsic document without identifying it in a clear, explicit and unambiguous manner: 28 R. C. L. 112, § 64.

Neither the language of the will nor the testimony in the case indicates that it was the intention of the testator to make the deed a part of the will. It is at most a

mere reference. It simply amounts to the belief of the testator that he had transferred certain parcels of real property.

It is shown by the record that Elvin Witham, after signing the deed, retained possession of the land during the rest of his lifetime, held possession and dominion of the deed, never delivered the same to the defendant George E. Witham, or authorized such delivery, and had the right to cancel the deed just as he had a right to change his will, and the evidence strongly shows he attempted to have the deed canceled by directing his wife to destroy the same.

■ There is some conflict in the testimony, but because of the fact that the trial court saw and heard the witnesses and was in a better position to segregate the truth from the conflicting statements than is this court, the trial court's finding is of great weight, and we are influenced to quite an extent thereby.

In a note to *Noble v. Tipton*, supra, found in 3 L. R. A. (N. S.) 645, we read:

"The decisions on the question of the effect of a recital in a will of a conveyance of land which was not in fact made, or which has proved to be ineffectual, seem uniformly to hold that such recital will not operate as a devise, but that the rights of persons interested must be determined by resort to the instrument referred to."

In Page on Wills, § 468, it is said:

"But where the testator, in his will, recites erroneously that he has conveyed certain of his real estate by deed to a certain named person, it does not show an intention to dispose of the property by will, but merely testator's opinion as to the legal effect of some pre-existing instrument. If, therefore, such pre-existing deed is, for any reason, invalid, the reference to it in

the will cannot be held to amount to a devise, by implication, of the property described in such deed, to the grantee therein.''

In *Allenbach v. Ridenour*, supra, we find the following language:

"It is contended that, even though the deed was never delivered, the will refers to the deed as having been executed, and the deed being actually in existence at the time the will was made, and being identified, it becomes part of the will as a devise after death. The contention is untenable. It is based on the declaration in the will heretofore mentioned to the effect that the testator had by deed conveyed the Lyell ranch, together with certain personal property, to his son, C. D. Ridenour. It is obvious that the reference in the will to the deed does not adopt the deed as a part of the will, nor does it otherwise appear therefrom that the testator intended to give the property described in the deed by will. It expresses merely the opinion of the testator that he had conveyed by deed to take effect on his death. It cannot, therefore, be taken as a devise by implication." See also *Smith v. Smith,* 113 Md. 495 (77 A. 975, 31 L. R. A. (N. S.) 922, 140 Am. St. Rep. 435); Underhill on the Law of Wills, § 475.

We quote from *In re Bagot*, supra, as follows:

"Suppose the testator recited in his will that he had some months before making his will granted a certain property to a purchaser which it was discovered after his death had not been so granted, but over which he had absolute power of disposition, could it in such a case be doubted that the property in question would pass under a general residuary gift in his will? I distinctly say it could not; but that case is the same in principle as the present."

See also *Hunt v. Evans*, supra, where the testator erroneously recited he had conveyed certain of his real property by previous deed, and in fact the deed was

not properly executed. The contention was made there that the deed should be adopted and read as part of the will. However, the court held the deed in question could not be adopted into the will and read as a part thereof.

██ The deed in question was found in the possession of Elvin Witham, the purported grantor, at the time of his death; therefore a presumption arises that it was never delivered. The burden of proving delivery is on the party claiming under the deed: 4 Thompson on Real Property, 961. In the note to *Butts v. Richards*, 152 Wis. 318 (140 N. W. 1, Ann. Cas. 1914C, 854) found in 44 L. R. A. (N. S.) 528, we read:

"And it has been held that there was no delivery of an unrecorded deed in the possession of the grantor at his death, although it was executed in the presence of a witness. (Parrott v. Avery, 159 Mass. 594, 22 L. R. A. 153, 38 Am. St. Rep. 465, 35 N. E. 94); or the grantor, after making the deed, said that the land in question belonged to his brother, who was the grantee named in the deed. (Maddox v. Gray, 75 Ga. 452)."

"As was said in Vreeland v. Vreeland, 48 N. J. Eq. 56, 21 Atl. 627: 'The fact that the deeds were, after the death of the grantor, found in his possession, and in the same place where he kept his other valuable papers, must, in the absence of all evidence to the contrary, be regarded as strong evidence that they had not been delivered; * * * and where, as in this case, the evidence of nondelivery arising from the possession of the deeds is corroborated by the fact that the grantor retained possession of the lands up to the time of his death, and exercised complete dominion over them as owner, the proof of nondelivery would seem to be well-nigh conclusive. * * *'"

And from the same note, page 536, we read:

"And the mere facts that the grantor, during his lifetime, spoke of the land as having been sold to the

person named in the deed as grantee, and that, after the signing of the deed, the grantee named therein went into possession, are not sufficient to establish a delivery of a deed found in the grantor's possession at his death. McLaughlin v. McManigle, 63 Tex. 553.''

■ We think the great weight of modern authority is to the effect that although there is evidence of an intention to make a gift of real property, clear proof of a delivery is required, and that a declaration of intention to make a gift or that a gift has been made are not sufficient in themselves to prove a valid delivery: *Atchley v. Rimmer*, 148 Tenn. 303 (30 A. L. R. 1481, 1491, 225 S. W. 366) ; *Jobse v. U. S. Nat. Bank*, 142 Or. 692 (21 P. (2d) 221. See *Liebe v. Battmann*, 33 Or. 241, 246 (54 P. 179, 72 Am. St. Rep. 705), where it is said:

''And so essential is delivery as a factor in the transaction that it is said: 'Intention cannot supply it; words cannot supply it; actions cannot supply it. It is an indispensable requisite without which the gift fails regardless of consequences.' ''

■ The evidence shows that there was no delivery of the deed and also that the decedent Elvin Witham did not intend or desire that it should be delivered. Mrs. Martha B. Witham, plaintiff, after testifying that the deed was never delivered to her, gave the following testimony:

''Q. Will you tell the court, Mrs. Witham, what Mr. Witham told you with reference to this deed that is in question here?

''A. Yes.

''Q. And as near as you can approximately when it was he told you?

''A. Well, I will tell it as near as I can. He was upstairs looking through his papers and he came down. I was in the kitchen and told me that the deeds were wrong and I was to destroy them; if anything happened to him I would be sure of my home.

"Q. That was about how long prior to his death?

"A. Well, I can't say exactly. It was three or four weeks before he had the stroke.

"Q. Before he became ill?

"A. Yes, before he became ill.

"Q. Did he at that time turn the deed over to you?

"A. He did not.

"Q. Mrs. Witham, when did Mr. Witham become ill?

"A. The 15th of December, 1934."

George E. Witham, one of the defendants, after referring to an incident which occurred at the Dixon place, testified as follows:

"Q. Mr. Witham was somewhat provoked about this, wasn't he?

"A. He might have been.

＊　　　＊　　　＊　　　＊　　　＊

"Q. And it did not promote the best of family feeling between your family and your father?

"A. I can't say as to that.

"Q. Then I will ask you, Mr. Witham, whether about a year later than that time you didn't ask your father for him to give you or loan you some money to purchase an establishment?

"A. I did. I asked him if he would help me out and he said no.

"Q. And you had a little bad feeling over that?

"A. Well, it was just a little tiff. It didn't amount to anything."

Charles Witham, brother of defendant George E. Witham, testified in part:

"Q. Do you deny you had a quarrel there the fall of the year 1933?

"A. Any quarrel that amounted to anything at all because we don't have that. We have had little spats like everybody does, but nothing of any serious nature."

Alfred Witham, son of Charles Witham, and a witness for defendants, testified as follows:

"Q. And do you remember an incident when your father came out when your grandfather was there, and they had some considerable discussion, harsh words back and forth between them?

"A. No, sir, I don't remember that. I remember my father being over there, but they didn't have no quarrel.

"Q. I will ask you this. You work for the Winney Brothers logging camp?

"A. Yes, sir.

"Q. At one time you were working along with Mr. McKinney, who is the husband of George Witham's daughter?

"A. Yes, sir.

"Q. I will ask you whether or not you didn't at that time tell Mr. McKinney that your father and grandfather had had a row down in the field?

"A. No. I didn't.

"Q. You didn't tell him that?

"A. No.

"Q. I will ask you further whether at that time you didn't tell Mr. McKinney that you didn't think your father was going to get anything out of the estate after the way they quarreled?

"A. Just thought. I remember saying that.

\*　　　\*　　　\*　　　\*　　　\*

"Q. Now then that took place, that quarrel caused you to make that statement took place the fall of the year that you were over there at your grandfather's place, didn't it?

"A. Yes."

C. W. McKinney, son-in-law of defendant George E. Witham, testified as a witness for plaintiff as follows:

"Q. During the course of that conservation was anything said with reference to how he was getting along with his sons?

"A. Why, he had had some words with Charlie Witham.

"Q. Did he say that?

"A. Yes, sir.

"Q. And did he make any statement to you with reference to his property?

"A. Why, he told me that in the conversation that if he should die first and leave his property to his boys that they would kick his wife out in the middle of the road."

It goes without saying that the intention of the testator, as gleaned from the language used in the will, in the light of the circumstances of the testator and the property which he was disposing of in his will, should control and be upheld and carried out.

In *Gerrish v. Gerrish,* 8 Or. 351, 353 (34 Am. Rep. 585), cited by defendants, the only mention of her heirs by the testatrix, Mary Ann, was contained in the following provision:

"I direct that whatever may remain at my death of the personal property bequeathed to me by my late husband, James Gerrish, for my life, shall at my death be distributed in accordance with the provisions made in the last will of my said husband concerning the same."

The will of James Gerrish referred to provided as follows:

"I give and bequeath to my beloved wife Mary Ann all the rest and residue of my personal property for her lifetime; at her decease I do devise and bequeath all that may remain of my real and personal property to each of my living children and the children of my deceased daughters alike, to be divided as a majority of them shall say, by sale or otherwise."

This will was upheld and the clause referred to in the husband's will was given effect in order to carry

out the intent of the testatrix and to uphold the will. The case is not like the one in hand where it is contended by reference to a void deed that the will should be deleted or the main part of it defeated. Every case must from necessity stand upon its own particular facts and circumstances.

It is contended by defendants that this land was not devised to plaintiff by this will "for the reason that the will has the same effect as if it had been written 'devise all of my property except what I have heretofore transferred and conveyed to my sons George and Charles Witham.' " The trouble here is that there had never been real property transferred to the son, George E. Witham, for the reason heretofore suggested, that the deed referred to was not valid.

■ It was evidently the intention of the testator, and the language of the will shows that he intended, to dispose of all his property. The will provides: "all of the rest, residue and remainder of my property, real, personal and mixed and wheresoever situate, I do give, devise and bequeath unto my beloved wife, Martha B. Witham." The will conveyed to plaintiff a fee simple title to the real estate involved herein. The will was regularly probated. There has been no contest or objections thereto, insofar as we are informed.

■ Anent the question of estoppel, we are referred to 2 Herman on Estoppel and Res Judicata, 756, § 619, where it is stated in part:

"Where a covenant or recital in a deed to one man is so worded as to induce a third person to adopt a course from which he cannot recede without injury, there is sufficient privity to give rise to an estoppel."

■ In the present case there was nothing done by plaintiff in any way to induce defendant George E.

Witham, or anyone to adopt a course from which he cannot recede without injury to himself, or to change his course in any way. We think there is nothing shown in the record to estop the plaintiff from claiming title to the land as intended by the will of Elvin Witham.

We concur in the finding of the learned trial court that no agreement was ever entered into between the decedent Elvin Witham and Martha B. Witham and defendant George E. Witham for the distribution of Elvin Witham's property, as alleged by defendants.

We have carefully read all of the testimony and briefs and considered the oral argument; in fact, we have given the case our best consideration.

The decree of the lower court should be affirmed. It is so ordered.

BELT, KELLY and ROSSMAN, JJ., concur.