Argued June 11, affirmed July 15, petition for rehearing
denied September 9, 1959

## NORTHERN ET AL *v.* EVANS

342 P. 2d 122

*Norman K. Winslow,* Salem, argued the cause for
appellants. With him on the brief was S. E. Scoville,
Brownsville.

*Laurence Morley* argued the cause for respondent.

On the brief were Morley & Thomas, Lebanon, and Weatherford & Thompson, Albany.

Before McALLISTER, Chief Justice, and ROSSMAN, O'CONNELL and CRAWFORD, Justices.

CRAWFORD, J.  (Pro Tempore)

Plaintiffs are the heirs at law of Margaret C. Evans, deceased. Defendant is the widow of Fay Evans, the only child of Margaret C. Evans. Plaintiffs appeal from a decree refusing cancellation of certain deeds to real property recorded in Linn County, Oregon. The deeds were executed by Margaret C. Evans in July, 1941, naming Fay Evans and Marion Evans as grantees. They were recorded in January, 1953. Counsel agree the only question of any consequence arises from the issue of delivery. Plaintiff Elvin Northern is administrator of the estate of Margaret C. Evans, deceased. Defendant Marion Evans is administratrix of the estate of Fay Evans, deceased. Fay Evans died in an automobile accident in December, 1952, and Margaret C. Evans in January, 1953.

Plaintiffs contend there was no manual delivery of the deeds, but if so there existed no intent in Margaret C. Evans to "presently" pass title to the named grantees and rely strongly upon the "after conduct" of Margaret C. Evans. Defendant argues for manual delivery in July, 1941, with accompanying intent to *then* pass title.

It is defendant's position that if it is established there was actual delivery in July, 1941, any "after conduct" is unimportant save so far as throwing light on the intent of the deceased. And that, in any event, the "after conduct" is entirely consistent with defendant's position.

The essential facts are these. The deeds were executed in the law office of Orval N. Thompson, attorney, Albany, who testified concerning the circumstances attending the incident. Mrs. Evans requested Mr. Thompson to prepare deeds conveying all of her property to her son Fay to avoid the necessity of probate. Mr. Thompson criticised this proposal, and explained:

> "* * * a deed was not good unless delivered during her lifetime. The way to transfer property during lifetime was by deed. If she wanted to make it good and binding, it would be necessary the deed be delivered to him during her lifetime."

This was discussed on two or three occasions.

> "* * * She also wanted in the deeds her son and his wife Marion be named as grantees. I pointed out, if the deeds were delivered as she wanted and she got into old age and needed money for her support, she wouldn't have anything. Maybe it might be necessary to sell some property and she couldn't do it. It would be Fay's and Marion's property. She was not concerned, that they would let her have any of it for her support. I pointed out that she would be dealing with her daughter-in-law if Fay should die, and she scoffed at that and said Marion would take care of her the same as Fay if she needed help."

And continuing:

> "Q When the deeds were prepared, they were executed in your presence; is that correct?
> "A That's right.
> "Q Did you give any instructions to Mrs. Evans as to what to do with the deeds, or did she take action without your instructions?
> "A The deeds were signed, and I notarized them and put my seal on them and handed them to Mrs. Evans and said something to the effect,

'Here are your deeds,' and she turned to Fay and said, 'Here are the deeds.' and turned them over to him.

"Q  Did she actually hand the deeds to Fay?
"A  She did.

"Q  Do you recall what she said?
"A  My best recollection is she said, 'Here are the deeds, son,' something to that effect.

"Q  Did you have some discussion with her after the deeds were delivered?
"A  It is my recollection she discovered she hadn't brought me all of her old deeds. I secured descriptions from the old descriptions. I recall we made one deed from each description. She discovered later one or two descriptions were not included. That was taken care of on the 28th day of July.

"Q  Did she deliver those to Fay?
"A  Yes, handed them to Fay in my office.

"Q  And give them to him the same as the others?
"A  Yes, that's right."

J. K. Weatherford, Jr., attorney, who handled the Evans' affairs after Mr. Thompson entered the Service, testified concerning the understanding between Margaret, the mother, and Fay, the son, as to the arrangement they contemplated and were making. Fay and Marion, his wife, were to have the title to the property, Margaret was to enjoy all benefits normally resulting from unqualified ownership, to live upon the premises, handle all transactions connected therewith and retain all benefits; all with the permission of Fay and Marion.

The following is quoted from his testimony:

"A  That's right. And part of those conversations there would have been conversations between Mrs. Evans and Fay relative to their ownership in this property at Brownsville; and I remember

that, in the presence of Fay, Margaret Evans told me she had deeded all her interest in the property to Fay and his wife Marion and it was their property; and Fay says, 'But she gets the income off from it as long as she lives. I try to get her to spend it, but she won't do it.' It was that kind of conversation.

\* \* \*

"Q Did she ever say anything about getting the income from the property, to you, in any event?

"A She told me she was putting it in the joint bank account, hers and Fay's name. I do recall one statement she made when Fay was not present when she said, 'The kid (as she often called Fay) gets it after me because I am keeping this money and not using it.' "

Shortly after the execution and delivery of the deeds they were deposited in a safety deposit box (by whom is a little uncertain), which box was prior thereto owned by Margaret C. Evans. Immediately thereafter the box was transferred to the name of Fay Evans. The box registration is a little difficult to follow through the years, there being some confusion attending payment of the fee, the listing and the bank's practice. A part of the time between 1941 and 1953 the box was recognized as being owned by Margaret C. Evans, Fay Evans, or both. At the time of death of Margaret and of Fay the box was listed in the name of the latter. However, the situation was clarified in Margaret's letter to the bank, dated November 30, 1950, marked Exhibit B, which reads as follows:

"Enclosed find a check for three dollars and sixty cents for Box No. 16. Will you please transfer this Box No. 16 to Fay G. Evans name, 324 Southeast Tucker Street, Beaverton, Oregon. As most of the papers in there is his, and he said it would

be better for it to be in his name. When he is up here at the bank it is not open so we could not get to see you. Send the notice to him. I have the key so he can always get them here.

Yours truly,

(Signed) Mrs. Margaret C. Evans."

As to the "after conduct" on which plaintiffs rely as impelling the conclusion of non-delivery, we accept the factual discussion of plaintiffs, but do not find the same as sufficient impact to induce the conclusion that delivery was not effected. The possession of keys, control, management, payment of taxes, making repairs, reporting income derived therefrom, sale of the two parcels, the bank accounts and all related activities were entirely consistent with the theory of a conveyance to trusted son and daughter-in-law, with the understanding the benefits should be Margaret's, title and right to control in Fay and Marion. It is to be observed the deeds contain no reservation providing for return of title if requested. In this respect Exhibit "C" is of interest:

"Lebanon Hospital<br>Lebanon, Oregon

Dear Marian

Here I am in the Hospital again  Dr said this morning it was just more than I can stand

They had locked that saftey deposite box at Halsey so I could not got thoes deeds  I got the bank acct changed and also the other acct changed to my name  So you can see what you can do with the saftey deposite box  it would be better to turn it back to me and let me make a will to you

This is as long as they will let me set up  So By Dear and write soon

Mother"

■ Delivery is supported by the unqualified grant in the deeds with no strings attached, the handing of the deeds to the grantees and the evidence establishing the intention of the grantor to vest absolute and unrecallable title in the grantees. Title passed on delivery conforming to the intent of the decedent and this could not be, and was not, divested nor affected by any "after conduct", which we find wholly insufficient to negative intent. 16 Am Jur, Deeds, §§ 120, 121, 122, pp 504, 505.

■ True, the "after conduct" is of significance in testing delivery from the aspect of intention of the grantor and, as argued by counsel, may be held to be inconsistent with delivery save when the same is pursuant to and conforms with the agreement and understanding of the parties, as here. The burden was on plaintiffs to prove absence of intention. *McGuigan v. Hewer,* 66 ND 710, 268 NW 679, 141 ALR p 308, 56 ALR p 747; *Hitch v. Hitch,* 24 Cal App2d 291, 74 P2d 1098. And delivery is not rendered ineffective because of any subsequent custody in the grantor; this is merely an incident. 16 Am Jur, Deeds, § 129, p 511, 56 ALR p 315; *Shaver v. Canfield,* 21 Cal App2d 734, 70 P2d 507; *Flinn v. Potter,* 99 Cal App 106, 277 P 1060.

■ The facts in this case bring it clearly within the authorities and establish the necessary delivery. And, it may be added, the handling of this transaction was just exactly what was to be expected by mother, son and daughter-in-law entertaining such mutual affection and confidence.

Affirmed.