Argued October 5, 1966, reversed and remanded February 1,
petition for rehearing denied March 21, 1967

HANNS, *Appellant, v.* HANNS ET AL, *Respondents.*

423 P. 2d 499

*J. W. Walton,* Corvallis, argued the cause for appellant. On the briefs were Ringo, Walton & McClain, Corvallis.

*John B. Leahy,* Eugene, argued the cause for respondents. On the brief were Bartle & Leahy, Eugene.

Before MCALLISTER, Chief Justice, and PERRY, O'CONNELL, DENECKE and REDDING, Justices.

REDDING, J. (Pro Tempore).

This is a suit in equity brought by plaintiff, Frank J. Hanns, against Satolli W. Hanns, a single man, Sylvania M. Kremmel, a single woman, Rosina Hanns Mounce and her husband, and Steven J. Hanns and his wife, to impose a constructive trust upon the proceeds from the sale of a certain parcel of real property in Eugene, Oregon. The plaintiff, Frank J. Hanns, is the son of P. J. Hanns, a deceased son of Joseph A. Hanns. Plaintiff has named all of the children of Joseph A. Hanns and his wife Emma, surviving at the time this suit was instituted. Their spouses were also named as defendants. Of the defendants, however, only Satolli W. Hanns and Sylvania Kremmel, brother and sister, defended in the trial court, and only they have appeared in this court as respondents.

■ This being a suit in equity, it becomes the duty of this court to determine the issues de novo and in so doing, to review the entire record and make its own evaluation of the facts. For this reason, it becomes necessary to here review in some detail the facts leading up to this litigation. As will appear later in this opinion, we find that some of the trial court's findings of fact are unsupported by the evidence.

Until approximately one year prior to the death of Emma Hanns in 1930, Joseph and Emma Hanns, the mother and father of the defendants, were the sole occupants of the family home, the property in question at East 13th Avenue and Oak Street in Eugene, Ore-

gon. By 1929 all the surviving children of Emma and Joseph A. Hanns had grown to adulthood. Satolli Hanns had joined the navy in 1918, where he remained until after the death of his parents. Sylvania Kremmel had married. In 1929, Emma became seriously ill and Sylvania and her husband moved in with her parents and cared for both of them until their respective deaths—Emma in 1930 and Joseph in 1938.

During most of the period of Satolli's absence while in the navy, he made monthly allotments to his parents of $100. The evidence shows that the sums so contributed to them by him over the years totaled approximately $13,000. He also deeded certain real property to his parents.

Joseph A. Hanns, the father, executed a deed dated and acknowledged December 28, 1937 to the home property at 13th Avenue naming as grantees Satolli Hanns and Sylvania Kremmel. It is assumed that he then placed the deed in his safety deposit box in the First National Bank in Eugene. We say it is assumed for as far as the evidence shows, it remained there, undisturbed, until after the grantor's death in 1938 when P. J. Hanns, by virtue of his office as administrator of his father's estate, gained access to the deposit box.

The defendants asserted in their brief and upon oral argument that the deposit box was used jointly by Joseph A. and P. J. Hanns. The only evidence on the subject, however, compels a contrary conclusion. On direct examination as an adverse witness, Satolli Hanns, one of the defendants, testified as follows:

"* * * * *

"Q When did you first discover the existence of that deed?

"A In . . . Let's see. It was '56 when my brother told me, my sister and I, that our names were on the deed.

"Q So that it is fair to say that prior to this time you had no idea that such a deed existed?

"A No.

"Q Where was that deed during this period of time? Do you know?

"A I assume it was in the bank box.

"Q And this was a bank box held by your father, Joseph Hanns?

"A Joseph Hanns."

Later on the same subject Satolli Hanns testified as follows:

"Q Now do I understand you correctly, Mr. Hanns, to say that P. J. Hanns made a statement to you that he had recorded this deed in about 1956?

"A Yes.

"Q Do you know where the deed was kept thereafter?

"A I am not sure, but I assume it was put in the bank box.

"Q This would have been in P. J. Hanns' bank box?

"A Yes, in Joseph A. Hanns' box. Yes, P. J. Hanns' box.

"Q Well, is there a difference?

"A No, they are the same.

"Q But Joseph Hanns had the box up to the time of his death, is this correct?

"A This is true.

"Q And then P. J. Hanns took it over after that?

"A That is right."

On cross-examination by his own counsel, with regard to the control of the bank box, Satolli Hanns was asked:

"Q And was this bank box originally owned by your father, Joseph Hanns?

"A It was.

"Q And upon your father's death was it owned by your brother, Peter or P. J. Hanns?

"A That is true.

"Q He was the executor of your father's estate?

"A Yes.

"Q And so the property that was in the bank box *subsequent to your father's death* would be under the control and effect of your brother, Peter, is that correct?

"A That is true." (Emphasis supplied.)

From the above, constituting all the evidence on the subject, it can be seen that there is no evidence from which it can be inferred that P. J. Hanns ever "used jointly" the deposit box where the deed was placed by Joseph A. Hanns. The most that can be gathered from the above testimony is that after the death of Joseph A. Hanns, P. J. Hanns, as administrator of his father's estate, obtained access to the box. Any assumption that the box was used jointly is pure conjecture and is contradicted by the evidence.

The trial court found that Joseph A. Hanns delivered the deed to P. J. Hanns with the intention that it be recorded. No evidence supports this finding. The evidence does not indicate that P. J. Hanns knew of or had any access to the deed until after the death of Joseph A. Hanns and the record is silent as to the intention of Joseph A. Hanns when the deed was executed.

The trial court found that after the delivery of the deed to P. J. Hanns, P. J. Hanns "retained the deed in his own safety deposit box in what was then the First National Bank of Eugene. That Joseph A. Hanns died on December 21, 1938 and the deed *remained* in the custody of P. J. Hanns until \* \* \* recorded \* \* \*." (Emphasis supplied.) The evi-

dence fails to show that P. J. Hanns had a safety deposit box prior to Joseph A. Hanns' death, or that he knew of the deed. On the contrary, the testimony shows that only after the death of Joseph A. Hanns, did P. J. Hanns acquire control of the box where the deed was found.

What transpired with regard to the deed between 1938 when P. J. Hanns obtained access to the safety deposit box and 1956 when the deed was recorded is undisclosed by the record. The defendant Satolli Hanns assumed it was kept by P. J. Hanns in the deposit box, and that assumption is not unreasonable.

During the period between the death of Joseph A. Hanns in 1938 and the sale of the property in 1962, Satolli and Sylvania were the principal occupants of the premises. For periods during this time portions of the premises not occupied by the answering defendants were rented or leased for dwelling and business purposes. The family members paid no rent and the rents received from the other tenants amounted to very little. As will appear later, it is significant that the rents which were received were turned over to P. J. Hanns who distributed them to all the family members, that is to say the heirs of Joseph A. Hanns, along with informal periodical accountings.

In 1956, P. J. Hanns recorded the deed from Joseph A. Hanns to the answering defendants herein. Without reason for aught that appears in the record the occasion for finally recording the deed which had been neglected for almost 18 years was the removal of P. J. Hanns from Eugene to McMinnville. After the deed was recorded, Satolli and Sylvania continued to live in the premises until the property was sold by them to Dunham Motors of Eugene on May 25,

1962, almost 18 months after the death of P. J. Hanns on December 2, 1960.

Plaintiff Frank J. Hanns, the son of P. J. Hanns, deceased, on October 28, 1963, filed the present suit to impose a constructive trust upon the proceeds of the property for his benefit and that of the other heirs at law of Joseph A. Hanns. Plaintiff alleged that by virtue of the deed purportedly executed by Joseph A. Hanns on December 28, 1937, and recorded on January 30, 1956, the defendants Satolli W. Hanns and Sylvania Kremmel claimed title to land actually owned by the heirs at law of Joseph A. Hanns. Plaintiff asserts that there had been no delivery of the deed by Joseph A. Hanns to the grantees or any other person during his life and that therefore the named grantees took nothing by such deed.

The plaintiff further alleged that he was the son, residuary legatee and sole heir of P. J. Hanns and is therefore entitled to his father's intestate share of the real property. That the property has been sold by the grantees to Dunham Motors of Eugene, a bona fide purchaser; that the grantees named in the deed are in possession of the proceeds of such sale and should therefore be required to hold such proceeds in constructive trust for the benefit of all the lineal descendants and heirs at law of Joseph A. Hanns and account for the rents and profits therefrom.

Defendants Satolli W. Hanns and Sylvania Kremmel, answered, admitting that they claimed the property in question by virtue of the deed described which was executed and recorded on the days stated, but denied the allegations as to the invalidity of the delivery thereof. And as an affirmative defense, defendants charged plaintiff with laches. Said answering defendants asserted that plaintiff, having knowledge

of the deed to Satolli W. Hanns and Sylvania Kremmel since January 30, 1956, and having delayed in the assertion of his claim until October 28, 1963, during which delay "* * * several persons familiar with the circumstances leading up the execution and delivery of said Deed have died," is barred by laches to assert his claim.

Plaintiff filed his reply denying the allegations of the answer.

On the trial of the case, the court received evidence as to the above facts and entered its findings of facts and conclusions of law.

The trial court found and apparently based its decree in favor of the answering defendants upon the finding that "[t]he sale was effected with full knowledge of all of the Defendants and of P. J. Hanns, father of the Plaintiff." It hardly need be stated that such finding is unsupported by any evidence and is unwarranted, since P. J. Hanns on the date of sale had been dead approximately 18 months.

The trial court, in substance, concluded as follows:

"That the deed from Joseph A. Hanns to Satolli W. Hanns and Sylvania M. Kremmel dated December 28, 1937 * * * is a valid and subsisting deed and that delivery of said deed by Joseph A. Hanns to P. J. Hanns was a good delivery and vested a fee simple title in the grantees.

"That said deed was recorded by P. J. Hanns who would be barred from asserting any claim to the property by reason of estoppel, waiver and laches and that the Plaintiff stands in no better position than his father to assert any claim to the property in question nor to the proceeds derived from its sale."

The decree denied plaintiff relief. Plaintiff in his appeal from the decree asserts as reasons for reversal

that the evidence does not sustain the trial court's conclusion that there was a valid delivery of the deed. It is further contended that plaintiff was not guilty of laches, i.e., such delay in asserting his claim resulting in a change of position on the part of defendants as would make it inequitable to afford him his requested relief.

The trial of the case disclosed that of the $41,000 derived from the sale, $21,000 remains and has been traced to a joint savings account in the Pacific First Federal Savings and Loan in Eugene, Oregon, in the names of Satolli W. Hanns or Mrs. J. A. Kremmel. Three thousand or three thousand five hundred dollars of the original $41,000 was used to pay income taxes upon the sale of the property. The remainder has been traced to other assets now possessed by defendants.

As we view the case, there are only two matters that need be decided. Did the deed convey the fee simple interest of Joseph A. Hanns to the defendants named as grantees therein? And, if it did not, is the plaintiff nevertheless barred from asserting his claim by reason of laches?

Since laches need only be discussed if the deed was inoperative to pass title to the grantees named therein for want of delivery, the question of delivery will be treated first.

■■ A deed, to be a valid means of effecting an inter vivos transfer of title to real property, must be delivered. *Jobse v. U. S. Nat. Bank,* 142 Or 692, 21 P2d 221 (1933). The cases uniformly state that a valid delivery of a deed requires that either the grantor part with control over the instrument, the right to recall it or to alter any of its provisions, or, if the grantor retains the instrument in his possession, he by word or deed discloses an unmistakable intention to

pass presently the interest which the deed purports to convey and thus deprives himself of control over that deed. This court, in *Pierson v. Fisher*, 48 Or 223, 233, 85 P 621 (1906), held:

> "The delivery of a deed is accomplished by the grantor's voluntarily passing it to the grantee or handing it to some person for him, or by the grantor's doing or saying something by means of which he discloses an unmistakable purpose to part with all control over the instrument and thus forever to put it out of his power to regain possession thereof: * * * [Citations omitted]."

See also *Witham v. Witham*, 156 Or 59, 66 P2d 281, 110 ALR 253 (1937), and *Jobse v. U. S. Nat. Bank*, supra.

■ But the mere parting with control over the instrument is of itself insufficient to constitute a delivery in law unless it is accompanied by an intention to create in the grantee a present interest. Failure to make any physical transfer of a deed is not necessarily fatal to its validity. Delivery is in its essence a matter controlled by the grantor's intention, not his actions. But his actions or his words necessarily constitute the evidence of what his intention was and therefore in the last analysis his words or acts are highly relevant in determining whether there has been a delivery. Mr. Justice O'CONNELL, speaking for this court in *Halleck v. Halleck et al*, 216 Or 23, 28, 337 P2d 330 (1959), states:

> "* * * Properly defined, delivery describes the passage of a property interest, normally the full legal title, from the grantor to the grantee. The interest passes if the grantor manifests the intention to pass it immediately—in the case of transfers of interest in real property the intention

to make legally operative a properly executed deed. American Law of Property, § 12.64; Tiffany, Real Property (3d ed), § 1034; *Lemon et ux v. Madden et al*, 205 Or 107, 284 P2d 1037 (1955); cf. *Witham v. Witham*, 156 Or 59, 66 P2d 281 (1937) noted 16 Or L Rev 420 (1937).

"The handing over of the deed to the grantee is significant only as evidence reflecting the intent of the grantor. Likewise the retention of the deed by the grantor is not controlling and it may be shown that in spite of the failure to transfer physically the deed to the grantee, the grantor intended the deed to have an immediate operative effect to pass all or a part of his interest in the land. *Fain v. Smith*, 14 Or 82, 12 P 365 (1886), cf. *Dickerson v. Murfield*, 183 Or 149, 191 P2d 380 (1948).

"Occasionally it is said that the grantor must give up dominion and control over the deed. *Lancaster v. May*, as Administrator, supra. This means only that the grantor must intend to pass presently the interest which the deed purports to convey and thus deprive himself of control over that interest. *Fain v. Smith*, supra. Control by the grantor over the deed itself is evidence, of course, that he may not have intended to pass an interest to the grantee."

■ The grantees of the deed from Joseph A. Hanns assert that the deed was given to P. J. Hanns for future delivery to them. If the facts so indicate, such a delivery would be valid in law if the transfer was intended by the grantor to create a present interest in the grantees. Delivery of a deed by a grantor to a third person for future delivery to a grantee without any reservation by the grantor of a right to recall the deed is a sufficient delivery to complete a transfer of title to the grantee, even though the grantee is unaware of the transfer until after the grantor's death if the grantee subsequently assents. *Masquart et al v.*

*Dick et al,* 210 Or 459, 310 P2d 742 (1957) ; *Hoffmire v. Martin,* 29 Or 240, 45 P 754 (1896).

■■ Proof of delivery thus depends upon the production of facts showing the grantor's intention. Upon whom did the burden fall to sustain their position as to the delivery or nondelivery of this deed? Ordinarily, a person challenging the validity of a deed in the possession of a grantee has the burden of proof on the issue thus raised.

> "The executed deed having been found in the possession of the * * * grantee named therein, a presumption arises that the * * * instrument was regularly delivered, and the burden of overcoming this disputable presumption, which results from such fact, is imposed on the person alleging to the contrary: * * *." *Pierson v. Fisher,* supra, 48 Or at 232-233.

See also *Miller v. Weaver,* 78 Or 594, 153 P 465 (1915) ; *Swank v. Swank,* 37 Or 439, 61 P 846 (1900) ; *Flint v. Phipps et al,* 16 Or 437, 19 P 543 (1888) ; *Northern et al v. Evans,* 217 Or 605, 342 P2d 122 (1959) ; *Malaney v. Cameron,* 98 Kan 620, 159 P 19 (1916). On the other hand, where during his life, a grantor retains possession of or the right to recall a deed executed by him, the presumption is that such deed was not delivered.

In *Farmer v. Runnels,* 244 Miss 525, 142 S2d 198 (1962), a deed was executed by grantor during his life, but was unrecorded until after his death. The trial court found that the deed had not been validly delivered. On appeal, the Mississippi court stated (at pp. 529-530) :

> "* * * The deed was retained by the grantor until his death, a period of about seven years. A short time after the grantor's death, I. A. Farmer [the grantee] found the deed among the papers

of the grantor and it was then placed of record. This retention of the deed by the grantor raises a presumption that it was never delivered * * *."

This placed the burden of proof to show delivery upon the parties asserting title under the deed. Finding no evidence to overcome the presumption of non-delivery, the trial court was affirmed.

In *Shetler v. Stewart and Weber,* 133 Iowa 320, 107 NW 310, 110 NW 582 (1906), a grantor executed two deeds and placed them with his papers where they were found after his death, taken possession of and recorded by the grantees. A son of the grantor and one of the two heirs at law brought suit to quiet title. The trial court dismissed the suit. On appeal, the Supreme Court of Iowa reversed, saying:

"* * * [I]t is the undoubted rule of the cases, generally speaking, that the delivery of a deed to the grantee named or to some person for him is essential to the validity thereof. Without delivery there is no deed. Now the proof in these cases goes no farther than to show the execution of deeds which were found among the private papers of the grantor after his death. Under such circumstances the law presumes that no delivery had ever been made. *Hutton v. Smith,* 88 Iowa, 238; *Miller v. Murfield,* 79 Iowa, 64; *Furnes v. Eide,* 109 Iowa, 511. In this state of the record we reach the conclusion that the deeds became as so much waste paper upon the happening of the death of the grantor, and defendants by securing possession thereof acquired no rights or title * * *." 133 Iowa at 324.

In the case of *Blain v. Blain,* 215 Iowa 69, 244 NW 827 (1932), W. J. Blain died testate in San Diego, California in 1931 possessed of legal title to certain land in Iowa. J. W. Blain, brother of decedent, claimed the

land by virtue of a deed in which he was named grantee. The deed was discovered after the death of W. J. Blain in his safety deposit box among his other papers. Plaintiff sought to quiet title to the land in a suit against the decedent's widow who defended the suit alleging that the plaintiff was not entitled to quiet title since there was no valid delivery of the deed. A judgment for defendant wife was affirmed.

"*  *  * Where a deed is found in the grantor's box after his death, without anything more, there is no presumption of a delivery. *  *  * [Citations omitted.] Of course, when *  *  * the deed, signed and acknowledged by the grantor before his death, is found thereafter, naming the claimant as grantee, and there are other facts and circumstances indicating an intention on the grantor's part to deliver the deed to the grantee, such delivery, under proper limitations, will be upheld *  *  *. [Citations omitted. See Northern et al v. Evans 217 Or 605, 342 P2d 122 (1959).]

"In the case before us, however, it cannot be said that the appellant has shown the necessary corroborating circumstances to indicate that W. J. Blain, who signed and acknowledged the deed before his death and placed it in his safety deposit box, intended it to be delivered thereafter to the appellant *  *  *." 215 Iowa at 77.

There are many other cases to the same effect, such as *Thrasher v. Thrasher,* 202 Va 594, 602, 118 SE2d 820 (1961), where the court said:

"*  *  * Where the grantor retains possession [of the deed] without declaration or other evidence of intent to deliver, the inference is that he had no purpose at the time to deliver it. *Enright v. Bannister,* 195 Va. 76, 80, 77 S.E.2d 377, 380. '*  *  * [T]here can be no delivery of a deed by a dead hand. A deed as such, must operate, if at

all, *inter vivos.' Mumpower v. Castle,* 128 Va. 1, 11, 104 S.E. 706, 709."

In *Witham v. Witham,* supra, Elvin and Martha Witham executed a deed to certain land owned by Elvin in fee simple to George E. Witham, their son. Elvin Witham, one of the grantors, then deposited the deed in his strong box where it remained until after his death. Martha Witham, the other grantor, and executrix of the estate of her husband, then handed the deed to George, the grantee. George recorded the deed.

Elvin's will provided for a nominal legacy to George Witham stating that a parcel of real property conveyed to him during life constituted his share of the estate. Martha, the widow, was residuary legatee. She brought suit to cancel the deed on grounds of non-delivery and obtained a decree. George Witham appealed, asserting the validity of the deed and that its delivery was accomplished by the grantor's having given the deed to his wife to be delivered to the grantee after the grantor's death. This court held:

> "It is contended by defendants that 'The deeds to the sons were left by the father with the plaintiff, his wife, to be delivered to the sons upon his death.' The testimony in the case does not support this contention. Plaintiff testified that she never had the deeds in her possession until after the death of her husband and the trial court found that the deed under which the defendants claim had never been delivered but at all times remained in the possession of and under the dominion and control of the decedent, Elvin Witham * * *.
>
> * * * * *
>
> "In order to constitute a valid deed it is essential that the deed be delivered, and to constitute a delivery the grantor must part with control over

it and retain no right to reclaim or recall it: *Jones v. Schmidt*, 290 Ill. 97 (124 N.E. 835); 18 C.J. 208, §§ 113, 114; 1 Devlin on Deeds (3d Ed.), 448, § 279.

\* \* \* \* \*

"It is shown by the record that Elvin Witham, after signing the deed, retained possession of the land during the rest of his lifetime, held possession and domination of the deed, never delivered the same to the defendant George E. Witham, or authorized such delivery, and had the right to cancel the deed just as he had a right to change his will \* \* \*.

\* \* \* \* \*

"The deed in question was found in the possession of Elvin Witham, the purported grantor, at the time of his death; therefore a presumption arises that it was never delivered. The burden of proving delivery is on the party claiming under the deed \* \* \*." 156 Or at 63, 64, 66, 68.

The court, finding no evidence to overcome the presumption of nondelivery affirmed the ruling of the trial court and held that the property in question passed by the residuary clause of decedent's will.

The case before the court is similar in many respects. Here the deed was executed by Joseph A. Hanns and was placed in his safety deposit box where it remained until his death. The evidence does not disclose that anyone other than he knew of the deed's existence or had access to it prior to his death.

Assertions that P. J. Hanns had access to the deposit box during Joseph A. Hanns' life and that the deed was delivered to him with the intention that it later be recorded are unsupported by the record. As indicated above, the testimony shows that prior to his death, Joseph A. Hanns only had access to the deposit

box and that not until after the death of Joseph A. Hanns did P. J. Hanns obtain access thereto.

Contrary to the finding by the trial court, the testimony does not disclose that during the life of Joseph A. Hanns delivery of the deed was made to P. J. Hanns or to any other person for the grantees. So far as is shown by the record any inference that P. J. Hanns even knew of the existence of the deed prior to the death of his father would be wholly unwarranted. The evidence stands uncontradicted that the safety deposit box where P. J. Hanns found the deed after his father's death was under the exclusive control of Joseph A. Hanns until his death. And any assumption that P. J. Hanns had access to the box during Joseph A. Hanns' life is not sustained by the evidence. So far as can be determined, Joseph A. Hanns was the only person who knew of the deed's existence during his life other than the attorney who drew it. The deed was at all times subject to his dominion and control.

There is nothing in the record to indicate that prior to his death Joseph A. Hanns did any act or made any statement showing that he intended the deed to operate as a present irrevocable conveyance of title. The facts that he kept the existence of the deed secret and retained it in his possession until his death negate any such intention.

The grantees had the burden to establish delivery in this case. Having failed to do so, the presumption that a deed found in the possession of a grantor at his death is not delivered stands unrebutted. No delivery having been established during the life of Joseph A. Hanns, the deed was entirely incapable of passing title after death. Upon the death of Joseph A. Hanns intestate, the title to the property in issue descended to his heirs at law.

We reached the foregoing conclusion with reluctance for from the record it would appear obvious to us, as we assume it did to the experienced and able trial judge, that the grantees named in the questioned deed executed by their father richly deserved receiving the family home. The daughter, Sylvania M. Kremmel, devoted many years to the care, first of her ill mother, and then of her aged father. The son, Satolli W. Hanns, the other grantee, regularly contributed substantial sums of money over the years from his meager earnings as a member of the United States Navy to the support of his parents. Of the four children of the grantor, surviving at the time the within suit was instituted, the two named as grantees in the questioned deed obviously deserved to be rewarded for the contribution which they made to the support and care of their parents. It is reassuring to note that because of family loyalty and also we assume because of their sense of fairness and justice, the two children of the grantor now living, other than the grantees named in the questioned deed, that is to say, Rosina Hanns Mounce and Steven J. Hanns, have asserted no claim to the family home nor to the proceeds derived from the sale thereof.

▬▬▬ It follows that as sole heir and residuary legatee of P. J. Hanns, the plaintiff is entitled to the relief sought unless there is some reason why, in equity, relief should be denied. Defendants have asserted that plaintiff is not entitled to relief on account of laches. Laches has been defined as:

> "* * * [N]eglect, for an unreasonable and unexplained length of time, under circumstances permitting diligence, to do what in law should have been done, resulting in a disadvantage to the other party." 30A CJS 19, 20, Equity § 112.

It is to be emphasized that laches does not result from delay alone, but from unreasonable and unexplained delay in asserting rights which has resulted in disadvantage or prejudice, making it inequitable to afford the relief sought against a party asserting laches as a bar thereto. *Dahlhammer and Roelfs v. Schneider Exec.,* 197 Or 478, 252 P2d 807 (1953).

16. Preliminarily, it may be noted that a delay in asserting a claim to real property for a period short of the statutory period for adverse possession, 10 years, does not operate to transfer title to a party in adverse possession. *Bonninghausen v. Hansen,* 305 Mich 595, 9 NW2d 856 (1943). Such delay to assert a claim of title, if resulting in prejudicial change of position may, however, cause equity to refuse its relief, where that is sought.

As a basis for their claim that plaintiff is barred to assert an interest in the proceeds of the sale of the property in issue, defendants alleged that plaintiff had knowledge of the defendants' claim of adverse title since January 30, 1956, the date on which the deed in question was recorded. They have alleged that for a period of approximately seven years he did not assert any trust created by the deed; that during such period testimony of witnesses familiar with the circumstances leading to the execution and delivery of the deed have died.

Defendants had the burden to prove their contentions in this regard. No claim of title adverse to the intestate interest of P. J. Hanns was made by the defendants until 1956. At that time the deed in question was recorded, giving rise to a claim of exclusive title in defendants. Such claim was, of course, adverse to the interest of P. J. Hanns. At the time of the filing of the instant cause, October 28, 1963, the statu-

tory period for adverse possession had not run against P. J. Hanns or his successor in interest. While courts in granting relief peculiarly within the power of equity are not strictly governed by the statutes of limitations for analogous cases at law, nevertheless such statutes are generally applied by analogy, where laches is asserted. *Anderson v. Baxter,* 4 Or 105 (1871). And where, as in this case, a suit has been brought within the statutory period, the burden rests upon the defendants to show circumstances amounting to laches. *McIver v. Norman,* 187 Or 516, 205 P2d 137, 213 P2d 144, 13 ALR 2d 749 (1949). In the absence of an affirmative showing to that effect, the plaintiff is not to be precluded from his claim to relief.

■■ Defendants contend that plaintiff delayed some seven years in asserting his claim. That contention cannot be sustained. Plaintiff's only interest in the property is derived from his status as heir and residuary legatee of P. J. Hanns. That interest accrued upon the death of P. J. Hanns, his father, on December 2, 1960, and not before. Prior to that time he had no legally enforcible interest and clearly could not have obtained either legal or equitable protection of a mere expectancy. Laches cannot be charged against plaintiff based upon a failure to sue before he possessed an interest which the courts would or could recognize. *Le Cain v. Becker,* 58 So2d 527 (Fla 1952).

■ Plaintiff testified, and his testimony was not controverted, that he had no actual knowledge of the defendants' claims until 1962 when defendants sold the property. While it is true that the deed, under which defendants claim, was recorded in 1956, he cannot be charged with constructive notice of the purported deed before he knew or reasonably should have known he had an interest which was being threatened. Plaintiff

in this case was not aware of the claims of defendants until after May 25, 1962, when defendants sold the property. He filed his complaint in the instant cause on October 28, 1963. Such delay as occurred was not unreasonable and caused no prejudicial change of position to be made on the part of defendants.

Defendants, however, argue that P. J. Hanns was guilty of laches and that as his successor in interest, the plaintiff is charged with the laches of his predecessor.

Let us examine the evidence in support of that claim.

P. J. Hanns knew of the existence of the deed for approximately 18 years before he recorded it. Such delay, however, did not under the circumstances constitute laches. Title had descended to him and his brothers and sisters by intestacy. The rents from the property were collected by the occupants thereof and were turned over to P. J. Hanns who accounted to all the heirs of Joseph A. Hanns. All the heirs treated the premises as a cotenancy and not as the exclusive property of any to the exclusion of the others. No claims adverse to the rights of P. J. Hanns were asserted prior to 1956. P. J. Hanns had no duty to cause a suit to be brought to establish his title prior to the assertion of some claim in denial thereof. He had no duty to assert his title at a time when the adverse claim (which was in fact invalid) was unknown to the purported grantees, and when they could, of course, not in good faith rely thereon to their damage. "* * * [D]elay, which the defense contemplates, is not delay in bringing claims to the attention of the defendant * * *." *Boris v. Moore,* 152 F Supp 602, 604 (DC Wis 1957), affirmed, sub nom *Boris v. Hamil-*

*ton Manufacturing Company,* 253 F2d 526 (7th Cir 1958).

■ Why after almost 18 years P. J. Hanns caused the deed to be recorded is not clear. Whatever his reasons may have been, the recording of the deed lent it no validity as a conveyance. Being undelivered at the death of Joseph A. Hanns, it was incapable of delivery thereafter and was void. *Mumpower v. Castle,* 128 Va 1, 104 SE 706 (1920). The fact that P. J. Hanns personally recorded the invalid deed, the fact that he may have believed it to be valid, would not have prevented him from subsequently asserting his rights. *Witham v. Witham,* supra, wherein one co-grantor delivered a deed to a grantee after the death of her co-grantor, she was permitted to subsequently assert the nondelivery of the deed.

In our view, the period during which laches, if any, must have occurred was between the recording of the deed by P. J. Hanns in 1956, giving rise to the claim adverse to his interest and the time of his death in 1962. That period was less than the statutory period for acquisition of title by adverse possession, and, therefore, the burden was upon defendants to show that the delay was unreasonable or unexplained and resulted in disadvantage to them. They have not only failed to produce evidence as to the unreasonableness of delay short of the period of the statute of limitations, which alone is fatal to the defense of laches, but have further been unsuccessful in showing that they have been put at a disadvantage by such delay as has occurred.

■ With regard to the second essential element of laches, prejudice, it is sufficient to note that if defendants were now in possession of the real property in question, no claim of prejudice or disadvantage could

be asserted. During the period between the delivery of the deed and the death of P. J. Hanns, the defendants remained in possession of the property and were uninjured by P. J. Hanns' failure to assert his rights. They now possess the proceeds of the sale of said real property. The change in the form of the property is not prejudicial to them. Where the delay has resulted in no disadvantageous change of position, it can make little difference to the defendants whether the right is asserted sooner or later.

■ Joseph A. Hanns was survived by six children —Viola, Steve, Pete, Satolli, Rosina and Sylvania. Under the laws of intestate succession, an equal share of the property or its proceeds descended to each. Each heir is entitled to a one-sixth share of the net proceeds derived from the sale of the home property. Defendants herein are not prejudiced in a legal sense if they do not retain more.

> "The harm or prejudice necessary to the defense of laches is not merely loss of what otherwise would have been kept, but disadvantage in asserting and establishing the claimed right or defense." 30A CJS 66, 67, Equity § 118.

To deny defendants a windfall which would result if their claim of laches were sustained is not the kind of prejudice which impels courts exercising equity powers to deny relief which is otherwise appropriate.

■ Defendants further claim that they are prejudiced in their defense by the loss of the testimony of witnesses who have died during the period of plaintiff's alleged delay in asserting his rights. Loss or obscuration of evidence is sufficient prejudice to cause a denial of equitable relief in an appropriate case, and loss of testimony due to death of an important witness

is, of course, prejudicial. *Stafford v. Ballinger,* 199 Cal App 2d 289, 18 Cal Rptr 568, (1962). But the loss of testimony must be a result of an unreasonable delay. So far as can be ascertained from the record, the only witness to die during the period here relevant was P. J. Hanns. As noted above, plaintiff had no protectible interest until after the death of P. J. Hanns. The loss of his testimony therefore cannot be attributed to a failure of plaintiff to assert his claim.

■ In summary, it appears that defendants' claim of laches is not sustained by the evidence. By impressing a constructive trust upon the proceeds of the sale of the property, defendants are left with all that to which they were entitled from the intestate estate of Joseph A. Hanns. To require them to hold the balance in trust is not to their prejudice.

Plaintiff has further claimed a right to an accounting for the reasonable rental value of the premises during the occupancy thereof by the answering defendants. The parties to this appeal, or their predecessor in the case of the plaintiff, were tenants in common by virtue of the intestacy of Joseph A. Hanns.

■■ At common law, and under the great majority of modern cases, one or more of several tenants in common may occupy realty without incurring liability for payment of rent for use and occupation so long as they do not exclude other cotenants from the exercise of similar rights. *Petchanuk v. Mohlsick,* 123 NYS2d 382 (Sup Ct 1953); *Bennett v. Bennett,* 193 Miscl 553, 81 NYS2d 653 (1948). While the answering defendants' claim of exclusive title, under the invalid recorded deed, would, under ordinary circumstances, constitute a sufficient ouster to give rise to a right in the ousted cotenant to an accounting for the reasonable rental

value of his share of the property, that result does not follow in this case.

Prior to P. J. Hanns' recording of the deed, he could not have asserted a claim against the answering defendants on account of rent based on their exclusive possession, for until the recording he had an equal right to possession. He could not create a right to recover rent in himself by effecting his own ouster by the recordation of the invalid deed adverse to his own title. Plaintiff is in no better position.

For the foregoing reasons, the trial court in framing its decree will allow plaintiff nothing on account of any claim against the answering defendants for rent because of their occupancy of the premises.

Reversed and remanded with directions to enter a decree herein consistent with this opinion. Neither party to recover costs. It is so ordered.